West Jersey Traction Co. v. Camden Horse R. R. Co.

WEST JERSEY TRACTION COMPANY, appellant,

v.

CAMDEN HORSE RAILROAD COMPANY, respondent.

CHARLES W. SCOTT et al., appellants,

v.

CAMDEN HORSE RAILROAD COMPANY, respondent.

CHARLES W. SCOTT et al., appellants,

v.

CAMDEN HORSE RAILROAD COMPANY, respondent.

1. The special act of March 11th, 1872 (*P. L. of 1872 p. 512*), which authorizes the Camden Horse Railroad Company to build a railroad or railroads on "any public road or highway extending from the city of Camden into the county of Camden," does not empower the company to build a railroad upon a public highway, no part of which touches the city of Camden; but does empower it to build more railroads than one upon the highways mentioned in the act.

2. A municipal consent to the laying of "a street railroad" in and along the streets of the municipality, is not a consent to the laying of two distinct street railroads.

3. When a statute requires "the consent of the township committee" to legalize the laying of a street railroad in the township, it is necessary that the consent should be given when the members of the committee or a majority of them are assembled in corporate meeting.

4. The declarations of individual members of a township committee are not legal evidence to prove prior acts of the corporate body, nor is the public estopped by such declarations.

5. Under the Traction Companies act of March 14th, 1893, a municipal consent to "the location of tracks" is invalid if it does not define the position of the tracks in the street.

6. Under the act of March 9th, 1893 (*P. L. of 1893 p. 144*), the consent of the township committee is necessary to legalize the construction of street railroads in any township.

7. If a company has legislative power to build a railroad on a designated street, provided the municipal authorities consent thereto, and it commences to build such railroad without municipal consent, the municipal authorities cannot grant to another company the exclusive right to build a railroad in that street, without giving to the first company notice and an opportunity to be heard.

On appeal from decrees advised by Vice-Chancellor Pitney, whose opinion is reported in *West Jersey Traction Co.* v. *Camden Horse Railroad Co., 7 Dick. Ch. Rep. 452.*

*Mr. Thomas E. French, Mr. Mark R. Sooy* and *Mr. Lindley M. Garrison,* of counsel for the West Jersey Traction Company, appellants.

*Mr. Jonas S. Miller* and *Mr. Thomas E. French,* of counsel with Charles W. Scott et al.

*Mr. Edward A. Armstrong, Mr. David J. Pancoast* and *Mr. Thomas N. McCarter,* of counsel for the respondent.

The opinion of the court was delivered by

DIXON, J.

On June 21st, 1893, the West Jersey Traction Company filed a bill of complaint to restrain the Camden Horse Railroad Company from constructing a street railway in the township of Stockton, Camden county, from the bridge over Cooper's creek, which divides the township from the city of Camden, along State street to Fourth street, and along Fourth street and the River road to the line between Stockton and Pensauken townships. The traction company based its claim upon the ground that by certain proceedings stated in the bill it had become invested with an absolute and exclusive right to lay its tracks along said streets, and that the construction and operation of a railroad thereon by the Camden company would be an invasion of the complainant's right and would cause the complainant irreparable injury.

West Jersey Traction Co. *v.* Camden Horse R. R. Co.

On August 14th, 1893, the Camden Horse Railroad Company filed a bill of complaint, and on August 17th, 1893, it filed another bill of complaint, the object of which bills was to enjoin the West Jersey Traction Company, the inhabitants of the township of Stockton, in the county of Camden, and the members of the township committee of said township, from interfering with the construction of a street railroad along Fourth street, in said township, by the Camden company.

After answers filed by all the defendants, these causes were heard together, and resulted in decrees dismissing the bill of the traction company, and granting to the Camden company the relief for which it prayed.

The traction company appeals from the decree dismissing its bill, and also from the decree rendered on the bill filed August 17th, in which it was a defendant; the township corporation and the members of the township committee appeal from the decrees rendered on the bills filed August 14th and August 17th, in both of which they were defendants.

In disposing of the questions raised by these appeals, it is convenient to consider first the right of the Camden company to construct a street railway along Fourth street, as claimed in its bills.

The company was chartered by act of March 23d, 1866 (*P. L. of 1866 p. 640*), which empowered it to build and operate a railroad on certain streets within the city of Camden only; a supplement to the charter, approved April 2d, 1868 (*P. L. of 1868 p. 638*), likewise confined it to the city of Camden; another supplement, passed March 11th, 1872 (*P. L. of 1872 p. 512*), authorized the company

" to build, maintain and use a railroad or railroads on any public road or highway in the city of Camden, or on any public road or highway extending from said city into the county of Camden."

Upon the last clause of this supplement the company bases a right to build a railroad along Fourth street.

We cannot concede this claim—Fourth street is not a " road or highway extending from the city of Camden into the county."

It lies wholly in Stockton township, and no part of it touches.
the city of Camden. True, it crosses State street, which extends.
out of the city into the township, and it ends in Federal street,.
which also extends out of the city into the township; but it is
as distinct from either State street or Federal street as any two-
intersecting streets can be from each other. To support this
claim of the company, we must interpret the language of the
statute as though it read that the company might build " a rail-
road or railroads extending from Camden city into the county on
any road or highway," an interpretation which would require
greater latitude of construction than is permissible in public-
grants. The legislature defined the highways which the com-
pany might use, not the railroads, and the company cannot go-
beyond the terms of the definition.

On April 5th, 1878, an act was passed (*Rev. Sup. p. 368*)
authorizing certain street railway companies to extend their-
tracks in any county,

"provided the consent of the township committee * * * of the town-
ship, upon the streets or roads of which it is proposed to lay such tracks, shall
first have been had and obtained.".

Under this act also the company contends it is entitled to lay
its tracks along Fourth street in pursuance of a consent given
by the township committee on May 12th, 1892, and it produces.
a writing of that date, signed by the three persons who then
composed the committee, certifying that permission had been and'
thereby was granted to the Camden Horse Railroad Company
" to lay and operate in and along the streets, roads, avenues and
highways of the township of Stockton, a street railroad."

Passing by the questions whether this statute is special and'
so unconstitutional, and whether the Camden company is em-
braced within its provisions, we think that, according to the-
terms of the above certificate, only one street railroad was-
authorized, and that the authority was exhausted by the con-
struction shortly afterwards of the Merchantville line. The fact
that the language of the certificate is broad enough to embrace-
all the highways in the township does not counteract the restrict-

ive force of the words "a street railroad," since a single street railroad may traverse any number of streets. The evidence is that, when this certificate was signed, the Camden company had in contemplation the immediate construction of a railroad through the township from the city of Camden to Merchantville, and that forthwith it built such a railroad, which was completed during the summer of 1892, and has been in operation ever since. The proposed railroad along State and Fourth streets is entirely distinct from this Merchantville line. Under the terms of the certificate, the company had the right of selection among all the highways in the township for the building of "a street railroad," but the selection being once made and the railroad constructed, the right ended. *Morris and Essex Railroad Co.* v. *Central Railroad Co., 2 Vr. 205; Allen* v. *Monmouth Freeholders, 2 Beas. 68.* A consent that the company might, at all times thereafter, lay as many railroads as it chose on any highways within the township, would, even if legal, be so unreasonable that it could not be judicially inferred where it was not couched in unquestionable terms.

But, even if the language of this instrument were as broad as the Camden company contends for, we would still be of opinion that the company's claim must be denied, because it appears that the consent so expressed was not the lawful consent of the township committee.

The second section of "An act concerning townships and township officers," approved April 21st, 1876 (*Rev. p. 1202*), provides that the clerk of the township shall act as clerk of the township committee and keep a record of its proceedings and record the same in the town-book. The town-book of the township of Stockton contains no record indicating that the committee ever gave the consent alleged. In view of the public duty of the town clerk, the absence of such a record shows, *prima facie* at least, under the maxim, "*Omnia rite acta præsumuntur*," that no consent was given by the committee. This presumption of fact is not rebutted by the proofs. According to the evidence the certificate above mentioned was signed by each of the three subscribers in the absence of his fellows. As the statute requires

the consent of the "township committee," it was essential to a valid consent that it should be given when the members or a majority of them were assembled in corporate meeting. *Schumm* v. *Seymour, 9 C. E. Gr. 143; 19 Am. & Eng. Encycl. L. 467.* Hence, this certificate cannot be itself the statutory consent. It is argued, however, that since the certificate states that permission *had been* granted, it is evidence from which the giving of a joint consent at some previous time may be inferred. But this position is untenable, for the reason that the declarations of the several members of the board, whether oral or written, are not, by any statute or by any legal rule, admissible to prove prior acts of the corporate body. The testimony of witnesses at the hearing favors rather than repels the belief that no consent was ever voted by the committee when assembled as a body.

But it is further insisted that, as the Camden company acted upon the supposition that this certificate was the requisite consent, or was conclusive evidence of it, the public authorities are estopped from denying such consent. The answer to this is that neither for the purpose of giving consent, nor for the purpose of making evidence that consent had been given, were the members of the committee, when separated, the representatives of the public; their conduct, then, was that of private individuals. Moreover, the legislature having provided that the official proceedings of the committee should be recorded in the town-book, the Camden company was not justified in relying on unwarranted assertions as to the acts of the committee, and the public cannot be estopped thereby. *Kean* v. *Elizabeth, 26 Vr. 337.*

With respect to the implied consent growing out of the alleged approval by the township committee of a grade map of Fourth street, in July, 1893, it suffices to say that, previously, the traction company had applied to the committee for permission to construct a street railroad along that street, and the committee had granted or attempted to grant such permission, and that, under these circumstances, a subsequent consent to build such a railroad on the same street could not lawfully be given to the Camden company without notice to the traction company. *West*

*Jersey Traction Co.* v. *Board of Public Works of Camden, 27 Vr. 431; affirmed on error, March Term, 1895.*

Our conclusion is that the Camden company has never acquired a perfect right to construct a street railway along Fourth street, and therefore that the decrees rendered on the bills filed by it on August 14th and August 17th should be reversed and the bills dismissed.

We come now to the questions raised by the bill of the West Jersey Traction Company, the first of which is whether that company has shown itself to be invested with an absolute and exclusive right to lay tracks from the bridge over Cooper's creek along State street to Fourth street, and along Fourth street and the River road to the easterly line of Stockton township.

The company was formed on May 13th, 1893, by the filing with the secretary of state of a certificate of incorporation under the Traction Companies act of March 14th, 1893. *P. L. of 1893 p. 302.* Simultaneously with the filing of this certificate there were filed in the same office a description and map of six routes of railway proposed to be built by said company, one of which covered the streets in question; and on June 20th, 1893, the company filed with the secretary of state a copy of a resolution which, on the previous day, had been adopted by the Stockton township committee, purporting to give the committee's consent to the "location of tracks" by the traction company along those streets, and also an acceptance by the company of such location. This consent was evidently designed to be the consent to the *location of tracks* provided for in the seventh section of the statute last mentioned, but as it utterly fails to indicate the location of the tracks in the streets named, it is invalid as a consent under that section, for the reasons stated in *Theberath* v. *Newark, 30 Atl. Rep. 528.* It may be, however, in substance, a consent to the *location of the route* under section six, and we will proceed to consider it in that aspect. According to the statute, such a consent, if properly granted, secures to the company an exclusive right for a limited time to build the line of railway indicated; that is, an exclusive right to the route, subject, of course, to the obtaining of municipal consent to the location of tracks thereon.

The question therefore arises whether this consent to the location of the route was properly granted.

The statute does not require notice to be given of an application for consent to the route, and as such consent does not usually affect private rights, notice to particular persons is not generally necessary. *Kennelly* v. *Jersey City, 30 Atl. Rep. 531.* But, in the present instance, we think the relations of the Camden Horse Railroad Company to the State street portion of the route, at least, were such as to require that notice should be given to that company before this application could lawfully be granted.

As already stated, the supplement to the charter of the Camden company, passed March 11th, 1872, authorized the company

"to build, maintain and use a railroad or railroads on any public road or highway in the city of Camden, or on any public road or highway extending from said city into the county of Camden."

State street is a public highway extending from the city into the county of Camden, and was therefore within the range of this grant. The traction company contends that, under this supplement, the Camden company obtained the right to use only one road leading from the city into the county, and that by building the railroad on Federal street from the city through the township of Stockton to Merchantville, in 1892, it had exhausted the right. But we deem this interpretation of that statute too strict to satisfy its terms. Its language is "to build a railroad or railroads on any public highway." Now, although the words "any highway" more aptly denote the selection of a single highway than the selection of several, yet it is not incapable of the latter signification, and to accord with the context in this statute, which authorizes the building of *railroads,* it must have the broader meaning, or else we must suppose that the legislature contemplated the construction of several railroads on the same highway by the same company. That supposition cannot be entertained, and therefore it follows that the power to build a railroad on State street remained.

On March 9th, 1893, the legislature passed an act to prohibit the laying or construction of any street or horse railroad along

the streets of any municipality of this state without the consent of the governing body having the control of the streets in such municipality, which act repealed all acts, general, special or local, inconsistent with its provisions. *P. L. of 1893 p. 144.* This act embraces townships (*Reed* v. *Wiley, 17 Vr. 473*), and in view of the act of March 8th, 1893 (*P. L. of 1893 p. 130*), increasing the powers of township committees, there can be no doubt those committees are in townships the governing bodies whose consent is required. At the time this act was passed the Camden company had done nothing towards the laying of a railroad along State street, in Stockton township, and as the supplement of 1872, authorizing it to build such a railroad, was subject to alteration and repeal, it is clear that after March 9th, 1893, the company could not lawfully construct a railroad in that street without the consent of the township committee; it being within the reserved power of the legislature thus to modify the franchise, which depended wholly upon the repealable statute and under which no property rights had been acquired. *Zabriskie* v. *Hackensack Railroad Co., 3 C. E. Gr. 178; Railroad Co.* v. *Maine, 96 U. S. 499; Greenwood* v. *Freight Co., 105 U. S. 13, 21.*

It thus appears that, on June 19th, 1893, when the township committee voted this consent to the traction company, the Camden company had legislative authority to build a railroad on State street, in the township, provided the committee consented thereto. It also appears that, before that time, the Camden company had actually commenced to construct a railroad on that street, and had proceeded so far in the work as to justify the inference that the township committee had become aware of its design. Under these circumstances, the committee could not lawfully confer the exclusive right to build such a railroad on the traction company without giving to the Camden company notice and an opportunity to be heard. *West Jersey Traction Co.* v. *Board of Public Works of Camden, ubi supra.* No such opportunity was afforded. A certain notice had indeed been published in a local newspaper, that the township committee would meet at the time stated to consider the petition of the

traction company for the location of its tracks in the township, conformably to the routes described in the office of the secretary of state, but it does not appear that the Camden company had actual notice of that publication, and the statute does not make it constructive notice of an application for a consent to the route. Even if the publication had come to the knowledge of the Camden company, it was too indefinite (the case being one where special notice was necessary) to inform that company of a purpose to consider a route which included State street. It should have been sufficiently explicit to indicate to the company that its interests were involved. *Vantilburgh* v. *Shann, 4 Zab. 740; Coar* v. *Jersey City, 6 Vr. 404; Bowker* v. *Wright, 25 Vr. 130.*

Consequently, we think the consent given was invalid as to State street, and since the route approved was an entirety, the consent must wholly fail.

For this reason, the traction company had not acquired the right upon which it based its claim for relief, and its bill was properly dismissed.

*West Jersey Traction Co.* v. *Camden Horse Railroad Co.*:

*For affirmance*—The Chief Justice, Dixon, Gummere, Lippincott, Magie, Reed, Van Syckel, Bogert, Sims—9.

*For reversal*—None.

Vote on other appeals:

*For reversal*—The Chief Justice, Dixon, Gummere, Lippincott, Magie, Reed, Van Syckel, Bogert, Brown, Sims—10.

*For affirmance*—None.